The Rockwool Insulation, Inc. v. Rockwool International A.S.S. If I may, Your Honors, I just want to briefly address a point Judge Taranto raised earlier. In addition to the arguments in our appeal that we've already discussed, there are a number of claims that have limitations that we feel were never addressed properly by the PTO. Do I understand? Just tell me if this summary is correct. There are five or six claims, one of which talks about above an impurity level. Others talk about other things, substantially, substantially all, a majority of melanoidin-based, I think are the different terms. And the board said your expert, Stamson? Hamson, Your Honors. Hamson, sorry. Hamson said nothing other than, nothing more than above the impurity level. And I take it your point is if you read the next sentence, actually he went on to say more than that. And so the board's decision on that simply cannot stand, except as to the single claim of that group that is limited to being above the impurity level. Correct, Your Honor. I think that's an accurate summary. I would add that, yes, the board failed to engage in a proper interpretation of the claims that have other language in them. Things like you mentioned of substantially all of the polymer that binds them out of fibers being made of melanoidins. And a majority of the fibers being bound by melanoidins. Things that require, each of these claims is different, so I don't want to. And haven't been construed. They haven't been construed, except to the extent that the board kind of implicitly construed them as all just meaning something greater than an impurity level. Which is what I believe the appellees argued in defense of the board's decision. To the extent that was the board's implicit construction, that can't be correct with the different claim language that was presented. As well as Dr. Hampson's explanation of what the different meanings and how those were supported by the patents in his declaration. And the last point I'll make to you, Your Honor, is with regard to the inherency point is, we think there's a claim interpretation issue there. But also, the board's analysis on inherency there is even more flawed than just generally finding that some amount of melanoidin would be present. Because they've jumped all the way from the side reaction that's not mentioned, not discussed, not appreciated in any of the prior art. All the way to the idea that you're going to be having binders where a majority or substantially all of the binder is made of this unappreciated material from the prior art. They got there by saying that, well, there's a substantial amount of reactions or reactants present in the references. But, Your Honor, we'd submit that that's not enough because it fails to account for all of the other reactions that are taught in those references that would be competing. And we submit out-competing any potential side reaction that was unknown and unappreciated of Maillard chemistry to produce melanoidins. So, jumping to the conclusion that 90% or 50% of the binder would be made up of this substance, which is never even mentioned in the prior art, clearly goes beyond. Well, they didn't say that anyway, right? I'm sorry, Your Honor? They didn't say that anyway. They didn't say what? They didn't use those numbers. They did not use those numbers, but the claim language that we have... I understand. Yeah, okay. Thank you, Your Honor. So, I'll reserve the rest of my time for... Well, we'll give you two minutes for rebuttal. Thank you. Mr. Holloway. May it please the Court, I'll begin with the idea that the Board failed to articulate motivation to combine here. And I would note that counsel started by saying they failed to do it, but then shifted and said they failed to rely on NAF's facts as to whether a person of ordinary skill in the art would have combined the references. Knopf on appeal does not dispute three important things. First, that Worthington and Wallace teach creating a binder of the same ilk that is claimed in the claims at bar through use of a Maillard reaction, even though those references don't say Maillard reaction, starting with the same materials that the claims at bar start with. So, they all start with the ammonium salts of a carboxylic acid, you react it with a reducing sugar, and you get a formaldehyde-free binder. Okay, but the problem is that all they said was that these references were similar, and they didn't say there would be a motivation to combine them, right? Respectfully, Your Honor, appendix pages 28 to 29, the way the Board couched this was it came to the Board on a different rejection, and the Board instituted a new ground. And the way they did that was to make a long list of factual findings about the references. And then at pages 28 to 29, they shift to describing how you would combine these references together. And the obviousness law about why or how the references should be combined is laid out there. You would look at the claim here, the problem to be solved is a formaldehyde-free binder. Wallace and Worthington both teach formaldehyde-free binders for bulk material. So, you don't need more of a statement of a reason to motivate to combine. You're doing the same things in the Worthington and Wallace references as you are in the claims at issue. Helbing comes in... But not with respect to glass fibers. Helbing, where I was going, Judge Lynn, Helbing is a formaldehyde-free binder for fiberglass fibers. And the difference between Helbing and the 2W references, as Judge Toronto put it, is it still describes starting with the same starting materials, except that Helbing refers to the reducing sorter in its genus form as a polyhydroxide. Yeah, but isn't that a significant question? I mean, the genus is enormous. The genus can't be anticipatory. But when you have a genus that's described as polyhydroxy, as big as the genus could be, you then look at Worthington and Wallace, which are at the same problem, formaldehyde-free bulk binders, starting with the same two materials reacting in ammonium salt of a polycarboxylic acid with a species of polyhydroxide reducing sugar. So, it's not a leap to take the express reactions of the 2W references and plug it into a genus of one of three reactants that are expressly described in Helbing. And that's the analysis at Appendix 28 to 29. Well, it's... I mean, that conclusion, it seems to me, to be entirely based on hindsight appreciation for the fact that if you make that kind of a combination, you might come up with something. But there's nothing I see in Helbing that suggests at all that you select from this enormous genus the sugar that would result in a Maillard reaction. Your Honor, I would agree. And I think that's why Appendix 28 to 29, the Board doesn't start with Helbing. And this Court's law is pretty clear. We don't really care what we consider a primary reference or a secondary reference. The question is, on the table and the bench in front of the person of skill and the art, they've got Worthington and Wallace, which are formaldehyde-free binder of the exact reactions that are at the claim here. That's not disputed. They argue there's other stuff there, and we can come back to that. But they don't dispute that that reaction is taking place and is taught by those references. And as Your Honor pointed out, the only thing missing is that it's not put on fiberglass. So what Helbing is offering you is the same categories of reactions to create the claimed binder. And you don't need to then start with the genus to find the species. Worthington and Wallace teach you the species. All Helbing is doing is expanding on the applicable use. Worthington and Wallace aren't fiberglass. Helbing is. So you could plug the reactions that are specific in the 2W references into the genus reaction of Helbing and its intended use for formaldehyde-free fiberglass binders. Could you address the cross-appeal issue? Is it the case that, for example, even if we held that you had no standing here on the cross-appeal, that the PTO is still going to do what you'd like to have done, and that is to consider the collateral estoppel issue? The basis of the appeal is to make sure the PTO gets it right. And because it's a legal issue, we can ask this court to do it. Yeah, but I don't think you're answering my question. Let's assume that we're not going to decide the collateral estoppel issue, that we think that the PTO ought to decide that in the first instance. Is there any difference between our saying you lack standing and this is going to happen anyway as a result of the PTO's own determination, and our saying that we do have standing and we're going to require them to do it? No, Your Honor. I mean, it's not like Rockwell can lose the collateral estoppel issue because I brought it up in the cross-appeal, and this court either passes on it because of standing or passes on it because we think the PTAB should address it first. And why do you have standing? The statute says anyone that doesn't like what happened in the inter-parties re-exam can make its appeal. And this court's case law in… The statute may say that, but you still need standing to come to an Article III court. Correct, Your Honor. And that's the Bailey v. Dart case at 292 F. 3rd at 1362. This court has held that a party seeking to look to expand or contract its rights from the same proceeding can do so in a cross-appeal. Yeah, but that's the basis for a cross-appeal or simply requesting an alternate ground of affirmance that has nothing to do with standing. Respectfully, Your Honor, I'm looking to… We have indicated by taking the cross-appeal that we intend to fight the issue that the already invalidated ex parte claims should take the place of the currently allowed inter-parties re-examination claims that we asked the PTO to merge three years ago. I'm sure you're aware we've now had about a half a dozen cases. These days we get the other kinds of IPRs, the inter-parties reviews. And we've said repeatedly that the fact that you put a lot of litigation resources into fighting something in the PTO, if you're the challenger, does not itself mean that you have standing to come here. And when standing is challenged, you actually need to come forward with evidence in the form of declarations or the like that says, here's why we as a company have a stake in this and you didn't. Again, respectfully, Your Honor, back to what Judge Dyk had said, we understand that this issue is something we could take at PTAB. We asked in the cross-appeal for it to be addressed on the basis that it was a legal issue that we thought this court could address. If because we are not coming forward and articulating that we think we're going to get sued or any of the other reasonable apprehension issues that the cases that Your Honor has brought up from the other IPR context, that's fine. We'll take our fight back to the PTAB. Rockwell has tried to merge these proceedings to avoid this problem. Us bringing the cross-appeal is our last attempt to get that relief that we've been trying to accomplish. Can I ask you about the set of the narrower argument that NAWF makes, the one about the half-dozen or so claims involving words like substantially or substantially all or majority. Why is it not right to say that the board simply misread what Dr. Hampson said and which would cover one of the claims, the one about being above an impurity level, but didn't otherwise have a basis for saying that these other claim elements and the other claims are met. It didn't construe what substantially or substantially all or majority meant and it didn't recognize that there was a factual assertion in paragraph 9 of his declaration. This is at 2224. Your Honor, the way I think the board approached this at appendix 51 and 52 is to consider Knopf's arguments that the group of these claims, be it whether you word it as above impurity level or you say substantially all, because substantially all is the language addressed in appendix 51 and 52, is there's nothing in these specifications to support a lower quantity limit to something like substantially all or above impurity level. Knopf wants this to be a claim construction issue and submitted a declaration, considered along with the specification, and in appendix 51 and 52, the board made a factual finding that there's nothing in record to support giving a lower quantity limit to substantially all. So it was pages what, 52? Appendix 51 and 52, Your Honor. And so if we make this a true claim construction challenge that Knopf, before the board, said substantially all has a number to it that Rockwell's evidence is insufficient, then under this court's decision in Teva and subsequent to that, the factual findings by the board get deference as to whether that claim of substantially all should be construed as having some lower number or anything above impurity level because that's what the declaration says. And so if you read the declaration in line with the spec, you don't get a lower number. So how is the board going to give a broadest reasonable interpretation of some number or even give weight to substantially all when it's not supported? And the board's factual findings, I mentioned 51 to 53, they also revisited this in a request for rehearing at appendixes page 62 to 66. That entire four pages is addressed at this issue of factual consideration and then the legal implications of what substantially all should mean and the evidence of record, which is nothing, as to how much that amount would be. Therefore, it was proper to say, even though the claim languages have things like substantially all, if the prior art teaches it at above impurity levels, it's teaching it for these claims. The last issue I would address in similar fashion, Judge Taranto, is consisting essentially of. Knopf said that the examiner, counsel just said that the examiner made that decision. It was also made by the board at appendix 17 through 18. Again, remember, the board wrote the first version of this rejection. This was not one that started with the examiner and then went to the board. It started with the board, went back to the examiner, and the board reaffirmed it when it came back to the board at appendix 51. And what the board has said is that consisting essentially of, in this context, does not get the limiting treatment. It adds nothing of patentable subject matter from the specification over what's found in the prior art. Therefore, we're going to read it as comprising. Unless there are other questions, I think I've covered. Okay. Thank you, Mr. Nolley. Mr. Larson, you have two minutes. Your Honors, unless there's any questions from the bench, we're happy to stand on the argument that's been submitted. Okay, thank you. Thank you. The case is submitted.